## THE STATE OF TEXAS v. MARIANO GARCIA.

38  543
39a  477

1. Under the statute of May 22, 1871, entitled "An act to encourage stock raising and for the protection of stock raisers," imposing certain fines recoverable before the District Court or any justice of the peace having jurisdiction, one half of the fine to be paid to the informer, and the other half into the county treasury: *Held*, that indictment will not lie, but proceedings should be upon the relation of the informer.

2. Under said act the fines can only be enforced on a *qui tam* action, prosecuted for the uses expressed in the statute.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

The indictment charged that the defendant "unlawfully and knowingly did purchase two hides from one Dyonesio Flores, he, the said Mariano Garcia, then and there well knowing that said Dyonesio Flores had skinned and taken off said hides of certain dead animals, to-wit, oxen; which said dead animals were not the property of said Dyonesio Flores, but were the property of one Juan Estevan de los Santos, and that said Dyonesio Flores, without the written authority of said Juan Estevan de los Santos, had skinned and taken off said hides from animals as aforesaid, and that said hides were purchased by said Mariano Flores without a proper bill of sale, as required by law, and did sell said hides, or send the said hides to the hide yard of Reese & Sons, in the city of San Antonio, Texas, without furnishing a proper bill of sale or hide inspector's report, as required by law."

The defendant excepted to the indictment for the reasons following: 1. That he is not charged with the violation of any criminal law of the State of Texas.

2. That the violation of the law, as charged in the indictment, to-wit, the buying, knowingly, of a hide skinned from a dead animal without the consent of the owner,

is punishable by a fine of ten dollars, recoverable in a *qui tam* action at the instance of an informer, and in no other way.

The court sustained the exceptions. From this the State appealed, and the action of the court sustaining the exceptions is assigned as error.

*Attorney-General*, for the State.—It is not easy to discover how the judge arrived at his second reason for quashing the indictment, that the law "provides a special mode of proceeding by *qui tam* action," when, to a common mind, the reverse would appear to be true. The language of the 8th Section (according to the provisions of which the fine prescribed in the 16th is to be recovered), is "recoverable before the District Court, or any justice of the peace having jurisdiction, etc.; one-half whereof shall be paid to the informer, and the other half shall be paid into the county treasury; and the offender or offenders shall be confined in the common jail until the whole of the fine and costs shall be paid, for which execution may issue," etc.

The first question that arises is, "What interest has the informer in the fine inflicted by the 16th Section?" The 16th Section prescribes that the manner of recovery shall be governed by the provisions of the 8th Section; but the 16th Section expressly provides that the fine so recoverable shall be paid into the county treasury; the 8th Section points out the mode of recovery, but gives an entirely different destination to the fine imposed therein—one-half to the informer, the other half to the county treasury. Must it be understood that because the 16th Section adopts the mode of recovery of the 8th, that it also adopts the destination of fine of the 8th, in contradiction to its own provision of destination? Or is it more proper to understand the adoption to be confined strictly to the

manner in which the fine shall be recovered, omitting the destination of the fine, that being provided for in the 16th? Is it not, at the least, doubtful, if the informer has any interest in the fine under the section under consideration?

But, admitting the informer to have an interest in the fine, there is no language used in the 8th Section conferring on him the power to sue for it in a *qui tam* action; and "it is a general rule, that no action for a penalty can be maintained by a common informer, unless power is given to him for that purpose by the statute." (Colburn v. Swett, 1 Met. (Mass.) Rep., 234, and cases there cited.) As no such power is expressly conferred, it will hardly be inferred from the expression, "one-half whereof shall be paid to the informer;" and the provision will be a dead letter upon the statute book, if the informer may not sue for want of power, and the State may not prosecute because half the fine goes to the informer.

Another consideration: If the only mode of recovering the penalty be (as the judge seems disposed to believe) by *qui tam* action by the informer, how will the provision in the 8th Section, that "the offender, or offenders, shall be confined in the common jail until the whole of the fine and costs shall be paid," be enforced, while Section 15, of Article 1, of the Constitution declares, "No person shall ever be imprisoned for debt," for the *qui tam* suit is but an action of debt on penal statute?

McADOO, J.—This case is brought to this court by appeal from a judgment of the District Court, quashing the indictment. The indictment charged the appellee with unlawfully purchasing two hides taken from certain dead animals, not the property of the person from whom they were purchased. This indictment was found under the act of twenty-second of March, 1871, "An Act to encour-

age stock raising, and for the protection of stock raisers."
(General Laws of 1871, 1st Ses., 117.)

The appellee moved to quash the indictment, which
was sustained by the court, and the district attorney ap-
pealed to this court.

The bill of exceptions shows that the indictment was
quashed because the act of May 22, 1871, is not amenda-
tory of the Criminal Code, but provides another mode of
procedure by *qui tam* action to recover penalties. These
rulings of the court below are assigned as error.

We think the first ground of assignment of error is
well taken. While the 1st Section of the code declares
that "the design in enacting this code is to define, in
plain language, every offense against the laws of this
State, and to affix to each offense its proper punishment,"
we do not conceive that it was the intention of the Legis-
lature, for all time to come, that all penal enactments
should be necessarily appended to the code as amend-
ments to it. Indeed, the 3rd Section of the code (Article
1605, Paschal's Digest) seems to exclude this idea in its
terms. It reads as follows: "In order that the system of
penal law in force in this State may be complete within
itself, and that no system of foreign laws, written or un-
written, may be appealed to, it is declared that no person
shall be punished for any act or omission as a penal of-
fense unless the same is expressly defined and the penalty
affixed by the written law of this State."

It was held in Cain v. The State, 20 Texas, 358, that
the act of February 2, 1856, passed at the same session as
the Penal Code, was not repealed by the code, though it
was made no part of it. A conviction was also sustained
in Brown v. The State, 20 Texas, 336, under the statute.

We hold that every enactment of the Legislature which
defines, in plain language, an offense, and clearly affixes
to such offense its proper punishment, must be regarded

as a valid penal law, whether the act have any reference
to the code or not. The other ground assigned as error
by the District Court for the quashing the indictment
is of a graver character—that the act of May 22, 1871,
does not contemplate a trial by an indictment, but by a
*qui tam* action. Indeed, it is very difficult to perceive
what mode of proceeding was intended by the Legisla-
ture to be adopted in the prosecution of the offense cre-
ated by that act.

The whole act is somewhat incongruous. The 16th Sec-
tion of the act, the one under which the indictment in
this case was evidently framed, assesses a punishment of
ten dollars fine "for each and every hide so skinned or
purchased, recoverable as provided in Section 8 of this
act, said fine to be paid into the county treasury."

Section 8, which provides for another branch of viola-
tions of this statute, makes the fine "recoverable before
the District Court, or any justice of the peace having ju-
risdiction." It also provides: "One-half of the fine
shall be paid to the informer, and the other half shall be
paid into the county treasury."

In a penal action such as that contemplated in the 8th
Section, the action cannot be by indictment, as the infor-
mer is entitled to one-half of the fine, and he must be a
party to the action; this he cannot be where the trial is
by indictment.

Proceedings should be upon the relation of the infor-
mer; in other words, it should be a *qui tam* action prose-
cuted for the uses expressed in the statute, and not an
action by indictment presented by a grand jury.

As the mode for enforcing the penalty under the 16th
Section is to be the same as that provided for in the 8th
Section, though no reason appears therefor, the offense
charged in this cause cannot be prosecuted by indict-
ment.

The indictment therefore was properly quashed, and the judgment of the District Court is affirmed.

AFFIRMED.